IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH, CENTRAL COURT DIVISION

FILED

2016 JUN 20  P 4: 24

DISTRICT OF UTAH

| | |
|---|---|
| **CHRIS SEVIER**<br><br>**V.**<br><br>**Bryan E. Thompson, in his official capacity as Clerk of Utah County; GARY R. HERBERT, in his official capacity as Governor of Utah; and SEAN REYES, in his official capacity as Attorney General of Utah;** | **COMPLAINT FOR INJUNCTIVE** CLERK **RELIEF**<br><br>**JURY DEMAND** |

## COMPLAINT

## I.   INTRODUCTION IDENTIFYING THE THREE WAYS TO LEGALLY DEFINE MARRIAGE

NOW COMES, Plaintiff Chris Sevier, former Judge Advocate General and Assistant US

Attorney, filing a complaint against Defendants Gary R. Herbert, Sean Reyes, and Bryan E.

Thompson, in their official capacities (collectively, "State of Utah" or "Defendants").[1] There are

three possible legal definitions of marriage. The first legal definition (man-woman) is completely

Constitutional; the second legal definition (man-woman; man-man; and woman-woman) is

completely unconstitutional under the 1st amendment under *Pleasant Grove City v. Summum*,

555 U.S.460 (2009)[2] and 14th amendment under McDonald for excluding the non-obvious

classes of sexual orientation; and the third legal definition is unconstitutional under the 1st

amendment *Summum*, 555 U.S. at 460 but is Constitutionally sound under the 14th amendment

under McDonald, if sexual orientation really is a suspect class.

---

[1] The Plaintiff relocated to Utah County and prefers to acquire a marriage license from that county as opposed to the more liberal Salt Lake County.

[2] See also *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005), *Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Van Orden v. Perry*, 545 U.S. 677 (2005); *McCreary County v. ACLU*, 545 U.S. 844 (2005); *Engel v. Vitale*, 370 U.S. 421 (1962); *Abington School District v. Schempp*, 374 U.S. 203 (1963); *Stone v. Graham*, 449 U.S. 39 (1980).

1. <u>First</u>, the idea of legally defining marriage between "one man and one woman" is

Constitutionally sound because it codifies self-evident truth, like the bill of rights, and is not

designed primarily for a religious purpose.[3]  Amendment 3 and the marriage statutes only

incidentally parallel Christianity and codify self-evident truth about the way humans are and the

way things are in a manner that accords with givenness of our nature and transcultural truth, just

like the bill of rights.[4]  No reasonable person is offended by man-woman marriage in the same

---

[3] Here, Professor Bruce Ledewitz's recent work on what he terms "higher law" offers a helpful perspective. Ledewitz, supra note 280, at 93 (stating by "higher law" he means "that there is something binding on all human beings everywhere"). Increasing global interdependence, along with religious and philosophical diversity worldwide, particularly the deep divide between secular rational and religious fundamentalist worldviews, has led academics in many disciplines to work on the project of finding common references for communication between the two perspectives. See, e.g., JURGEN HABERMAS, BETWEEN NATURALISM AND RELIGION: PHILOSOPHICAL ESSAYS (2008); Michael Perry, Human Rights as Morality, Human Rights as Law, in HUMAN RIGHTS RECONSIDERED (Mark Goodale, ed., forthcoming, Oxford Univ. Press), available at http://ssrn.com/abstract=1274728. While government may not endorse religion, it is free to endorse traditions of objective moral value, to promote ideals of justice and tolerance, and to reject nihilism and discrimination. Ledewitz, supra note 280, at 95. For a different approach on this issue see Beschle, supra note 347, at 177–90 (stating government may influence, or attempt to influence, its citizens' beliefs and values, but only as relates to the temporal welfare).

[4] See *Pleasant Grove City v. Summum*, 555 U.S.460 (2009) a display of the Ten Commandments in a public park in Utah was not Constitutionally sound because the 10 commandments parallel transcultural truth. However, the State of Utah was not in violation of the establishment clause by denying a new age church from erecting a statute of Seven Aphorisms were where based on values that were out of step with factual assertions. On February 25, 2009, the Supreme Court ruled unanimously against Summum in the Pleasant Grove case. Justice Samuel Alito, in his opinion for the court, explained that a municipality's acceptance and acquisition of a privately funded permanent monument erected in a public park while refusing to accept other privately funded permanent memorials is a valid expression of governmental speech, which is permissible and not an unconstitutional interference with the First Amendment's guarantee of free speech. According to Alito, "the display of a permanent monument in a public park" is perceived by an ordinary and reasonable observer to be an expression of values and ideas of the government, the owner of the park and the monument, even though the particular idea expressed by the monument is left to the interpretation of the individual observer. Alito made a clear distinction between forms of private speech in public parks, such as rallies and temporary holiday displays (Christmas trees and menorahs), and the government speech represented by permanent monuments. He opined that even long winded speakers eventually go home with their leaflets and holiday displays are taken down; but, permanent monuments endure and are obviously associated with their owners. Alito wrote, "cities and other jurisdictions take some care in accepting donated monuments." While Summum attempted to persuade the Court that preventing governments from selecting monuments on the basis of content would be tenable, Justice Alito noted that such a situation could put government in the position of accepting permanent monuments with conflicting messages, that do not represent the values and ideals of the community, or removing all monuments from public space. Alito also questioned whether, if the law followed the view expressed by Summum, New York City would have been required to accept a Statue of Autocracy from the German Empire or Imperial Russia when it accepted the Statue of Liberty from France

way that they are not offended by a definition that the sky is blue.[5] It is self-evident that men and

women spouses have sexually corresponding parts that when coalesced have the unique and

exclusive potential to create human life literally, as a byproduct of natural marriage. The children

of actual marriage are exclusively privileged to share the genetic code of two individual spouses

in the marriage, who are of opposite but equal genders, while being subject to the unique input

and influences of two adults with opposite biochemistry whom the child shares the same genetic

code with. Further, the children of actual marriage have an unbroken ancestral chain that makes

marriage situation completely and totally set apart, unique, and stand alone. For a moral relativist

to suggest that these facts do not make actual marriage a distinction with a difference is

intellectually dishonest and demonstrating an ongoing malicious pattern of using the ends to

justify the means to self-justify their own irrational and religious identity narrative.  Amendment

3 and the marriage statutes were not passed to exclusively codify Christianity,  Amendment 3

and the marriage statutes were passed for the opposite reason (for an irreligious reason). These

laws were passed to prevent self-entitled and manipulative moral relativist from using

government to codify their self-justifying and irrational private religious beliefs on marriage and

---

[5] While the purpose of Amendment 3 and the marriage statutes are "primarily secular," the attacks the original definition of marriage which seeks to expand the definition are not, which makes other forms of government sanctioned marriage indefensible under *Lynch v. Donnelly,* 465 U.S. 668 (1984). Additionally, by issuing licenses outside the definition of one man and one woman and by providing benefits, the state is a "speaker" of for the religion of moral relativism, which does not accord with a defense under Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753 (1995). If school prayer, Christian curriculum, benedictions involving religion, in God We Trust, and "under God" in the Pledge of Allegiance can come under judicial review for prospectively violating the Establishment Clause, then other forms of marriage can as well, since they clearly stem from identity narratives. Engel v. Vitale, 370 U.S. 421 (1962) (holding daily prayer at public schools unconstitutional). See *Edwards v. Aguillard,* 482 U.S. 578 (1987) (holding required teaching of creation science at public school unconstitutional). See Santa Fe *Indep. Sch. Dist. v. Doe,* 530 U.S. 290 (2000) (invocations before high school football game violated endorsement test); *Lee v. Weisman,* 505 U.S. 577 (1992) (invocation before middle school graduation violated coercion test). See *Marsh v. Chambers,* 463 U.S. 783 (1983) (upheld state legislative chaplain based on history and tradition). See *Van Orden v. Perry,* 545 U.S. 677, 716 (2005) (assuming constitutionality of "In God We Trust"). See *Elk Grove Sch. Dist. v. Newdow,* 52 U.S. 1, 38 (O'Connor, J., concurring in dismissal on standing grounds of challenge to words "under God" in Pledge of Allegiance).

truth.[6]  Amendment 3 and the Marriage statutes, therefore, do not codify religion, they prevent

moral relativist who are bent on using government to ratify their religious beliefs on the absence

of absolute truth from codifying their personal and irrational worldview.[7]  The state had a

compelling interest in passing Amendment 3 and the Marriage Statutes because all other forms

of marriage violate the community standards and obscenity codes - amounting to the government

promotion of obscenity - which threatens the youth and the state's identity.[8]

2. Second, the second way of legally defining marriage is the current definition provided by

*Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015)*, Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir.

2014)*, and United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), which is

completely unconstitutional for either being Constitutionally underinclusive (it arbitrarily

excludes the true minority in violation of the 14th amendment) or overinclusive (it gives

marriage rights to individuals based on their self-justifying identity narratives which entangles

government excessively with religion because the philosophy that sexual orientation is a basis

---

[6] Even if it were true that Amendment 3 and the marriage statutes wanted to put Christianity as a basis of law on top of the religion of moral relativism - which it is not - in McCreary County v. ACLU of Kentucky, 545 U.S. 844 (2005), Justice Scalia, accompanied by only one current member of the Court, Justice Thomas, argued that the Constitution allows, and even contemplates, governmental preference for religion over irreligion, which is to say that the Government favors a credible religion like Christianity over a fake one like Islam and moral relativism. Our laws have to accord with the truth and not fantasy. Because freedom cannot be found in the absence of truth. Freedom comes from the truth.

[7]  The legislative history of Amendment 3 is clear. For years Utah did not have a legal definition of marriage because it would like having a law that declared that the sky was blue. It is self-evident that actual marriage only involves one man and one woman, but Amendment 3 was passed because moral relativist were threatening to use the government to codify its hyper religious beliefs that are incredibly self-justifying and are sexually exploitative.
[8] It is clear from the holdings in *United States v. Windsor,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013* and *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) that all other forms of marriage amount to a critique on religion and critiques on religion are always a religion themselves.  The moral relativist on the bench took the opportunity in cases like *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014) and *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) to replace traditional morality with their own private morality through a series of power plays that were so dishonest that not holding the Judges accountable for that abuse of process, itself would be a manifest injustice. http://www.washingtontimes.com/news/2016/jun/13/activists-blame-christians-orlando-attack/

for civil rights is at best an unproven faith based assumption - if not a false one like the premises

of Islam).[9] The idea of legally defining marriage as a union between "one man and one woman;

or one man and one man; or one woman and one woman" utterly violates the 1st amendment

establishment clause under *Pleasant Grove City v. Summum*, 555 U.S.460 (2009) because it is

based on the shallow religious ideology of postmodern individual relativism that stems from the

enlightenment tradition. Assertions such as"some people are born gay" or "some individuals are

permanently gay due to genetics and immutable traits" amount to a set of religious truth claims

that cannot be proven and have to be taken on faith.[10]  Such naked assertions amount to unproven

faith based assumptions that are implicitly religious and are completely self-justifying in an area

---

[9]  The final decision in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) was either overinclusive (because all other forms of marriage violate the first amendment establishment clause because they are based on semi-religious identity narratives and naked assertions) or was underinclusive (because it left behind rights of the individuals in the true minority classes of sexual orientation). Either all individuals must be allowed to marry anything and everything they want in step with their sex preference, no matter how morally repugnant, or alternatively, there is a compelling interest for the Court to enjoin the state from recognizing all marriages besides man-woman marriage for attempting to codify religious ideology that critiques the truth and Christianity.  Man-woman marriage does not exclusively codify a religious belief. It is codifying self-evident fact just like the Bill of Rights and the vast majority of our laws to include the Constitution which happen to parallel Christianity. The legislative history of the cases that challenge the legal definition of marriage and the Court's decision is obvious that the change came as a result of the private moral code and religious beliefs of moral relativist in office.

[10] As it stands, the current definition of marriage violates the Establishment clause of the 1st amendment because the law is under inclusive and premised on the religion of Western Individualism post-modern relativism stemming from the enlightenment tradition. The new definition of marriage is absolutely predicated on unproven faith based assumption that are implicitly religious and actually prove to be irrational based on physical evidence and cosmological and teleological deductive reasoning. Truth claims coming from moral relativist on the bench such as: (1) "people are born gay," (2) "gay genes exist," (3) "sexual orientation involves immutable traits like skin tone does and is, therefore, a basis for civil rights,"(4) "there are no other forms of sexual orientation beyond gay and straight," (5) "if it feels right it is right, as long as it does not hurt anybody else," (6) "traditional morality as a basis for law is not valid, but the morality held by moral relativist can be; (7) moral doctrine does not matter when crafting law" are all unproven and amount to naked assertions that have to adopted on faith. All of these truth claims that support the current definition of marriage are not only inherently religious, they seem to be completely disproven and entirely irrational.  The fact that there are thousands of people who were convinced that they were gay only to later convert to a completely new identity narrative shows that all of these truth claims that make up the legal basis for gay marriage are as equally part of a false religion as the Islamic beliefs of Omar Mateen. But phony religious relativism and phony religious Islam have something else in common, they lead to sense of moral superiority that cultivates in a slippery slope of the heart that leads to marginalization and violent oppression of people who disagree. http://www.christianpost.com/news/former-gay-activist-marries-woman-addresses-critics-who-condemn-his-new-he terosexual-lifestyle-110736/

that falls under the obscenity codes. Therefore, for the government to codify such those positions based on identity narratives blatantly violates the 1st amendment establishment clause as it interferes with our Nation's and State's identity.[11] Moreover, the second way to legally define marriage completely excludes individuals who are in the true minority classes of sexual orientation, who self-identify as machinists, beastialists, polygamists, ect. There is no possible bases for Government to arbitrarily declare that gay marriage is not morally repugnant but all other forms are. That is, there is no rational vantage point from which the Court and state can suggest that man-man marriage is legally plausible but man-object marriage is not.  The promulgation of the current definition of marriage by a handful of federal judges in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) amounts to the most arrogant, self-defeating, intellectually dishonest, truth allergic power play demonstration ever displayed by Federal Courts since the inception of American Jurisprudence. It is no wonder that Justice Scalia called the Court "a threat to Democracy" in *Obergefell* without stuttering.[12]  The Court's integrity is absolutely on trial and the Plaintiff is demanding that *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015)*, United States v. Windso*r,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013)*, Romer v. Evans, 517* U.S. 620, 633 (1996)*, Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014), be overturned in part for being rife with intellectual dishonesty and unconstitutional self-justifying dealings by jaded and imperialistic judicial activist who maliciously abandoned their oath of oath and have cultivated a public health crisis and the proliferation of LGBT sexual exploitation of our youth.

---

[11]See also *Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550, 562 (2005), *Garcetti v. Ceballos,* 547 U.S. 410 (2006), *Van Orden v. Perry,* 545 U.S. 677 (2005); *McCreary County v. ACLU,* 545 U.S. 844 (2005); *Engel v. Vitale,* 370 U.S. 421 (1962); *Abington School District v. Schempp,* 374 U.S. 203 (1963); *Stone v. Graham,* 449 U.S. 39 (1980).

[12] *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015).

3. <u>Third</u>, the final way of legally defining marriage is to allow all individuals the "fundamental,"

"individual," and "existing" right to marriage that is bound in a "personal choice" no matter how

morally repugnant their request may seem. *Zablocki v. Redhail,* 434 U.S. 374, 384

(1978)(fundamental right); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940

(1974)(personal choice); *Loving v. Virginia*, 388 U.S. 1, 12 (1967)(existing right); *Lawrence v.*

*Texas*, 539 U.S. 558 (2003)(intimate choice). Of course, all forms of marriage other than actual

marriage (man-woman marriage) equally violate the first amendment establishment clause under

*Summons* at 460. But one form of non-traditional marriage does not violates the 1st amendment

establishment clause over any other. For example, man-man marriage is based on an unproven

identity narrative to the same extent that man-object marriage is.  The exact same legal basis that

supports man-man and woman-woman marriage equally supports man-object, man-animal, and

man-multiple person marriage under *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015), *Kitchen v.*

*Herbert,* 755 F.3d 1193 (10th Cir. 2014), *United States v. Windso*r, 133 S. Ct. 2675, 186 L. Ed.

2d 808 (2013).  To suggest otherwise is just more of the same intellectual dishonesty flowing

from the Courts that is causing the public to hold our Judiciary in contempt for its inability to tell

the difference between "right and wrong" and "real and fake" - which is eroding our liberty and

proliferate a sexual holocaust.  Justice Roberts admitted that the passing of gay marriage would

lead the Constitutional necessity to permit other forms on demand in his dissent in *Obergefell v.*

*Hodge,* 192 L. Ed. 2d 609 (2015).[13]  This action and others filed by the Plaintiff proves that he is

right. The Plaintiff is merely ahead of the cultural trends in self-identifying as a machinists.  For

the Court or state to critique the legal bases for man-object marriage, the Court or state

---

[13] *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015)(dissent Roberts)

undermines the legal basis for man-man and woman-woman marriage at the same time. In fact, to deny that Plaintiff the right to marry an inanimate object only further demonstrates that gay marriage has at all times been Constitutionally unsound on the basis of the 1st amendment, and that the 14th amendment does not really permit gay marriage because the idea that sexual orientation is a basis for suspect classification is merely a cultural fiction to self-justify sexual conduct that is inherently obscene, unnatural, subversive, shameful, immoral, and indecent. The Court is going to have to fully determine if sexual orientation is a basis for suspect classification or whether the Courts, like the one in *Lawrence v. Texas,* 539 U. S. 558, 575 (2004), were effectively lying to the American people when they pretended that sexual orientation was based on immutable traits in order to self-justify their own personal religious belief that truth is merely a man-made convention. *Lawrence v. Texas,* 539 U. S. 558, 575 (2004). The Plaintiff has every intention of providing former testimony from ex gays who were once gay activist in this action.

14

---

[14] The Plaintiff will parade former gay activist who turned straight into this action through sworn testimonies for which the Court will have zero explanation for if the holdings in *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) and *Lawrence v. Texas,* 539 U. S. 558, 575 (2004) were truth - which they are not.The CEO of the Ex-Gay Movement, Greg Quinlan, will be providing testimony in this action. http://ex-gaytruth.com/. The Supreme Court in *Lawrence v. Texas,* 539 U. S. 558, 575 (2004) was not being honest when it floated that sexual orientation was an "immutable trait." (see http://downloads.frc.org/EF/EF07K01.pdf) But even in an imaginary world if it was true that sexual orientation amendable, unlike race, insofar as it is not, it further supports the Plaintiff's demand that he be allowed to marry an inanimate object under the 14th amendment. The state lacks any plausible basis to deny the Plaintiff's request to marry an inanimate object, since man-man and woman-woman marriages have been legitimized because moral relativist have taken advantage of the same-sex litigants lawsuit to codify their own self-justifying religious beliefs in violation of the Constitutional oath. For these reasons, the Plaintiff seeks a declaration from this Court that Amendment 3 does not violate the first or 14th amendment in its original form but that, following *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) and *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 ), Amendment 3 does violate the Fourteenth Amendment to the United States Constitution as applied to the Plaintiff, and a reversal of the *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) and a judgment to permanently enjoin enforcement of Amendment 3 as applied to the non-obvious classes of sexual orientation or a permanent injunction to enjoin the state from recognizing any form of marriage other than actual marriage. While no reasonable person objects to man-woman marriage being part of the definition of marriage, many people object to the other possible forms. And since all other forms of marriage are based on identity narratives, laws that attempt to legitimize those identity narratives violate the 1st amendment establishment clause by definition. While other forms of marriage has not brought peace and unity, it has produced confusion, persecution, a basis for the Federal Government to

4. The Plaintiff is very concerned about how the new definition of marriage is impacting the youth culture in the areas of false permission giving beliefs and consent.[15] The Court has forget the feelings of selfish adults and think seriously about how the marriage laws are impacting the youth. The teen transgender suicide rate is completely out of control.[16]

5. The only question on the table is how should marriage be legally defined. Fortunately, the question in this case is not whether people who self-identify as gay or machinists should go to jail. They should not. Lawrence. Yet, whether the Government should codify identity narratives and allow for different forms of marriage is a different question - since doing so is unconstitutional under the first amendment. [17]

---

blackmail the states, and a public health crisis in concerning bathrooms. Transgender bathroom policies violate the 1st amendment establishment clause for the same reason that gay marriage does

[15] THE IMPACT ON YOUTH CULTURE IS PARAMOUNT: These matters are implicitly domestic and in keeping with the spirit of the domestic laws, the best interest of children should be considered of the utmost importance. The Plaintiff is greatly concerned about how the new definition of marriage is impacting the youth culture. If the first amendment does not apply and only the 14th amendment does, then hypothetically if "little Billy" is to grow up knowing that someday marrying "little Sally" or "little Timmy" are equally legally viable options, little Billy must also know that marrying a blow up doll, dog, or both little Sally and little Timmy are equally viable options as well. Yet, if the first amendment establishment clause does matter that changes things. Where a message communicated by the government is deemed primarily religious, generally the Establishment Clause is violated. Much of the precedent clearly supporting this broad general principle, however, is skewed by its source in the school context, where the Court is generally more careful due to the susceptibility of young students. See *Lee v. Weisman*, 505 U.S. 577 (1992) ("As we have observed before, there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."). And here is the bottomline: the legalization of same-sex marriage is confusing young people about appropriate forms of sexual conduct. Just like pornography does the grooming for human trafficking, laws that allow for other forms of marriage are used by the LGBT gestapo to recruit the youth to join their world view on sexuality which is rife with exploitative false permission giving beliefs. Cases are not tried in a vacuum. The Plaintiff is an international EDM artist and interfaces with the youth culture, until Federal Justices who live in their marble castles. The Plaintiff sees first hand how the youth is being crushed and confused by the fake gay rights movement. False permission giving beliefs in the area of sex are being normalized, which is eroding consent and leading to sexual horrors

[16] Making it easier to buy into the gay religious narratives is causing an increase in suicide to suggest otherwise is intellectually dishonest and impeached by the evidence. http://www.usatoday.com/story/news/nation/2015/08/16/transgender-individuals-face-high-rates--suicide-attempts/3 1626633/

[17] The Plaintiff suggests to the State and the Court that the current legal definition of marriage and the possible alternatives needs to be fully analyzed through cases like *Pleasant Grove City v. Summum*, 555 U.S.460 (2009). See also *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005), *Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Van*

6. The Court is being asked to either strengthen the holdings in *United States v. Windsor*,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014), *Romer v. Evans, 517* U.S. 620, 633 (1996), and *Lawrence v. Texas,* 539 U. S. 558, 575 (2004) or to overturn parts if not all of these cases. The implication of this case is substantial because if all forms of marriage are invalid for violating the 1st amendment and if sexual orientation is not really a suspect class for purposes of the equal protection and due process clause, then the legal basis that supports the transgender bathroom policies that the Federal Government is using to blackmail state's out of billions of dollars and threatening a public health crisis is also invalid.[18]

## A. NATURE OF THE CASE

7. More than 40 years ago, the Supreme Court of the United States recognized that "[m]arriage is one of the 'basic rights of man,' fundamental to our very existence and survival." *Loving v.*

---

*Orden v. Perry,* 545 U.S. 677 (2005); *McCreary County v. ACLU*, 545 U.S. 844 (2005); *Engel v. Vitale*, 370 U.S. 421 (1962); *Abington School District v. Schempp*, 374 U.S. 203 (1963); *Stone v. Graham*, 449 U.S. 39 (1980)

[18] The State is not merely on trial, the Court is effectively on trial for creating the new definition of marriage, and the Court's integrity in redefining marriage in a manner that (1) unquestionably violates the first amendment establishment clause and that (2) intentionally left behind the non-obvious classes of sexual orientation in violation of the 14th amendment is highly suspect and appears to have been carried out in bad faith. Either all individuals should be allowed to marry anything and everything they want in step with their tastes, or all marriages besides man-woman ones must be barred and nullified.

*McDonald v. Santa Fe Trail Transp. Co.*,427 U.S. 273, 27879, 96 S. Ct. 2574, 2578, 49 L. Ed. 2d 493 (1976). That's how the 14th amendment works. Man-object marriage does not violate the first amendment establishment clause any more or less than man-man and woman-woman marriage.  The Plaintiff accuses the Supreme Court majority of intentionally ratifying the a scheme to hijack the Constitution in a manner that amounts to tyranny and actionable treason in an effort to self-justify their reckless beliefs that truth is merely a man-made convention. The Plaintiff is not alone in that regard. Justice Scalia in reaction to the Obergefell Court's decision, stated that moral relativist on the bench represented a threat to Democracy. *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015).  He was right. The decisions in *United States v. Windsor*,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 ), *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015)*, Romer v. Evans, 517* U.S. 620, 633 (1996), and *Lawrence v. Texas,* 539 U. S. 558, 575 (2004) are rife with shallow reasoning and blatant judicial dishonesty and misconduct. This should end the pattern of abuse that is taking place or the Plaintiff will press the Senate Judiciary committee to impeach any justice who engages in judicial cover up.

*Virginia*, 388 U.S. 1, 12 (1967).[19] But today, as a result of the approval of Amendment 3 to the Utah Constitution on November 2, 2004, and its effective date on January 1, 2005 ("Amendment 3") in its modified form after the Supreme Court's decision in *Obergefell*, the State of Utah discriminates against and denies individuals who want to marry inanimate objects access to marriage by providing in its constitution that "[m]arriage consists only of the legal union [concerning man-woman, man-man, and woman-woman individuals.]" Utah Constitution, Art. I, sec. 29. ( *Obergefell* modification added).   Amendment 3 further provides that "[n]o domestic union, however denominated, may be recognized as a marriage or given the same or substantially equivalent legal effect." *Id.* This unequal treatment of different-sex individuals by the State of Utah denies them the basic liberties and equal protections under the law that are guaranteed by the Fourteenth Amendment to the United States Constitution for the exact same reason that it used to deny individuals who self-identify as homosexual and prefer to marry people of the same-sex in hopes of compelling the rest of society to afford individuals who self-identify as homosexual with a dignity interest to offset their natural feelings of inadequacy and shame, having only conformed to society's messages and opened doors that are sexually exploitative.[20]

---

[19] *Loving* was a case involving man-woman marriage. For proponents of other forms of marriage to use Loving to shoehorn their marriage ideals into legal cognizability is intellectually dishonest.

[20] Standing: The Plaintiff moved to intervene in the 10th Circuit and before the United States Supreme Court in. *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014). The same-sex litigants violently opposed his intervention requests because neither they nor the Courts really believe that homosexuality is based on immutable traits and they fear being exposed for their blatant fraud. The Defendants did not oppose his intervention request and consented to being sued here. Even if consent was required - and it is not - the state defendants waived their consent in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) by not opposing the Plaintiff's intervention request and taking it under advisement. The Plaintiff has standing to file suit in this action for the same reason that the same-sex litigants in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) and *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) did.  A district Court in Arizona did bar the Plaintiff's intervention request in a same-sex marriage matter there, but did find that the Plaintiff had standing to file his own lawsuit. (see Exhibit). Accordingly, any effort by the state to challenge standing or subject matter jurisdiction must be met with rule 11 sanctions.

8. This action, pursuant to 42 U.S.C. § 1983, seeks: (1) a declaration that Amendment 3 to the

Utah Constitution, which once denied gay and lesbian individuals and still denies different-sex

individuals the opportunity to marry civilly and enter into the same officially sanctioned family

relationship with their objects of love as heterosexual individuals and same-sex individuals are

granted the opportunity to do; and also denies man-object individuals legally married in other

states and countries from having their marriage recognized in the State of Utah as an officially

sanctioned family relationship with their preferred object of affection, the same as heterosexual

and homosexual couples legally married in other states are officially recognized in the State of

Utah, is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth

Amendment of the United States Constitution; and (2) a permanent injunction preventing

Defendants from enforcing Amendment 3 in its amended form or any other similar statute or

policy against Plaintiff and compelling Defendants to recognize the New Mexico marriage

between the Plaintiff and an inanimate object as a legal marriage in the State of Utah.

9. The Plaintiff also seeks (1) a declaration that Utah Code Ann. § 30-1-2(5), which prohibits and

declares void a marriage "between persons [who self-identify as something other than straight]";

and Utah Code Ann. § 30-1-4.1, which states that "[i]t is the policy of this state to recognize as

marriage only the legal union[s[ of a man and a woman [, of a man and a man, and of a woman

and woman] " and that "[e]xcept for a relationship of marriage between a man and a woman[, a

man and a man, and a woman and a woman] recognized pursuant to this chapter, this state will

not recognize, enforce or give legal effect to any law creating any legal status, rights, benefits, or

duties that are substantially equivalent to those provided under Utah law to a man and a woman

because they are married" (collectively "Marriage Discrimination Statutes"), are unconstitutional

under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United

States Constitution if gay marriage is actually valid; and (2) a permanent injunction preventing

Defendants from enforcing those provisions against Plaintiff and compelling the Defendants to

recognize the Plaintiff's out of state marriage legal marriage in the State of Utah.

10. The Plaintiff is a machinist who is in a committed relationship with an inanimate object with

the same procreative potential that Derek Kitchen has with his male wife Moudi Sbeity.  The

Plaintiff desires to express his love for, and commitment to, an inanimate object by marrying it

and obtaining official sanction for their family from the State of Utah, but Amendment 3 and the

Marriage Statutes, even after the State changed these policies following *Obergefell v. Hodge*,192

L. Ed. 2d 609 (2015), deny him that right in violation of the Due Process and Equal Protection

Clauses of the Fourteenth Amendment to the United States Constitution. It is quite simple the

question is whether the first amendment bars other forms of marriage and whether marriage

rights really do involve the 14th amendment or not. The Plaintiff is not very interested in any

further game playing dishonesty that the Courts continue to display in a manner that is

completely dishonorable and dishonest.

11. The Plaintiff had a legal wedding ceremony overseas via skype. The state of Utah refuses to

recognize the Plaintiff's existing right to marry in step with his peculiar sexual orientation that is

neither straight nor gay and the state of Utah refuses to recognize his out of state marriage. As a

citizen of the State of Utah, the Plaintiff desires to have the State of Utah officially sanction his

marriage choice in hopes of thrusting his take on morality down the throats of the citizens of

Utah even if it violates the community standard to a lesser degree than man-man and

woman-woman marriage, but Amendment 3 and the Marriage Discrimination Statutes bar the

State from treating him and his preferred spouse like homosexual and heterosexual married individuals who are Utah citizens married under the laws of other states, and from recognizing his fundamental liberty and right of marriage in violation of the Due Process and Equal Protection Clauses of the United States Constitution.

12. To enforce the rights afforded by the United States Constitution, the Plaintiff brings this suit, pursuant to 42 U.S.C. § 1983, for declaratory and injunctive relief against the enforcement of Amendment 3 and the Marriage Discrimination Statutes, even in its amended form which is underinclusive. The Plaintiff also seek to recover all their attorneys' fees, costs and expenses incurred in this action and any other relief that this Court may order.

13. The Plaintiff brings this complaint under the first amendment and 14th amendment because man-man, and woman-woman marriage at the exclusion of all other forms is predicated on the religion of moral relativism. The Plaintiff demands that the Court issue injunctions that either makes the state only recognize man-woman marriages, or alternatively, allows all individuals to marry anything and everything they want in step with a Constitutional morality that allows for uniform application. Amendment 3 does not violate the first amendment establishment clause or 14th amendment in its original form because man-woman marriage is based on fact and does not have to be accepted on faith. Yet it is truth that without faith, there is no basis for morality, and without morality, there is no basis for law. The Court can decide whether the "America is a Christian Nation" as the Supreme Court stated in *Holy Trinity v. United States,* 143 U.S. 457 (1892) or whether "America is a Savage" as Justice Kennedy insinuated in *Planned Parenthood v. Casey,* 505 U.S. 833, 84647 (1992). But either way, the Plaintiff demands at the very least that the United States be a "Constitutional Nation," and decide here and now if all other forms of

marriage violate the 1st amendment establishment clause. If not, the Plaintiff demands that individuals, like himself, in the non-obvious class of sexual orientation be given the same civil rights as those who self-identify as homosexual for at least long enough to receive a marriage license.

14. The Plaintiff is a combat infantry line officer, who risked his life in Operation Iraqi freedom to try an make the Court's overseas be more like the Courts in the United States, only to see that the Courts in the United States have turned their back on the rule of law and the United States Constitution. It is beyond upsetting and disturbing.

15. The Plaintiff is greatly concerned about children and the public health. The Plaintiff does not plan on using the ladies room because he was born with the male anatomy. His marriage request posses a lesser threat to the public health and Derek Kitchen's  request to marry Moudi Sbeity, who he is convinced is his wife. And as his wife Moudi Sbeity could believe that he is entitled to use the ladies room.

16. The State of Utah just found that pornography is a public health crisis. The purpose of pornography is self-sex. It is a form of sex outside of traditional marriage just like homosexual sex. The State cannot say that pornography is a threat to the public health but homosexual sex is not.  The Courts have to operate under a uniform standard of right and wrong, and stop taking its cues from Hollywood.

## B. JURISDICTION AND VENUE

17. The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein.  This action raises questions under the Constitution of

the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief pursuant 28 U.S.C. § 1331.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and the State of Utah. Venue is also proper because a substantial part of the events giving rise to the claims occurred in this district.

## C. PARTIES

19.  The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein.  Plaintiff Chris Sevier is a Utah citizen and resides in Utah County, Utah. The Plaintiff attempted to intervene in what became *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015) a total of eight times (at the District Court level in Tennessee and Kentucky, the 6th Circuit court of appeals level, and at the United States Supreme Court level). The Plaintiff was arbitrarily denied intervention because there was fraudulent judicial railroading taking place under the false veneer of legitimacy that stemmed from the unexamined assumption of the superiority of our cultural moment.  But Federal Courts are not supposed to be creature of culture. Courts are required to be slaves of the rule of law and the Constitution.[21] The Courts are completely out of control at the moment.  The Plaintiff seeks either a full revival of Amendment 3 and the Marriage Statutes or that they be further modified to accord with the 14th amendment.

20. Defendant Gary R. Herbert is the Governor of the State of Utah ("Governor"). In his official capacity, the Governor is the chief executive officer of the State of Utah. It is his responsibility

---

[21]  The  Nazis had Courts that were creatures of culture. This is what they looked like: https://www.youtube.com/watch?v=CKiqHpbFz68. After the war ended, many judges how were putting culture over the rule of law were hanged for good cause.

to ensure that the laws of the State are properly enforced. The Governor maintains an office in Salt Lake City, Utah.

21. Defendant Sean Reyes is the Attorney General of the State of Utah ("Attorney General"). In his official capacity, the Attorney General is the chief legal officer of the State of Utah. It is his duty to see that the laws of the State are uniformly and adequately enforced. The Attorney General maintains an office in Salt Lake City, Utah.

22. Defendant Bryan Thompson is the Clerk for Utah County. He is responsible for maintaining vital records of marriages, issuing marriage licenses, and performing civil marriage ceremonies in Utah County.

23. Defendants, and those subject to their supervision, direction, and control, are responsible for the enforcement of Amendment 3,  the Marriage Discrimination Statutes, the implementation of the change in law following *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), other laws and policies that have caused the Plaintiff to be injured. The relief requested in this action is sought against each Defendant, as well as against each Defendant's officers, employees, and agents, and against all persons acting in cooperation with Defendant(s), under their supervision, at their direction, or under their control.

## D. FACTUAL BACKGROUND

24. The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein.  Like Gay and lesbian individuals in the past, individuals who want to marry machines, animals, and multiple people have faced a long and painful history of societal and government-sponsored discrimination in this country.  Although their sexual orientation bears no relation to their ability to contribute to society, woman and men

who want to marry inanimate objects have been singled out for discriminatory treatment for the exact same reason that gay men and lesbian women once were. Machinists have faced unconstitutional criminal penalties for private sexual conduct between a consenting adult and their personal property, harassment, hate crimes, and discrimination in employment and many other areas like those who self-identify as homosexual. They have even been the subject of laws stripping them of rights afforded to all other citizens.

25. Utah has been among the states that have enacted laws stripping individuals who want to marry inanimate objects, multiple people, and animals of rights afforded to all other citizens. Machinist, beastialists, and polygamist have been the subject of hate crimes in Utah for their more peculiar identity narrative.

26. The Utah Legislature enacted Utah Code Ann. § 30-1-2, which prohibits and declares void a marriage between persons who want to marry anything other than a one member of the opposite sex. Utah Code Ann. § 30-1-2(5). The Utah Legislature also enacted Utah Code Ann. § 30-1-4.1 which states that "[i]t is the policy of this state to recognize as marriage only the legal union of a man and a woman" and that "[e]xcept for a relationship of marriage between a man and a woman recognized pursuant to this chapter, this state will not recognize, enforce or give legal effect to any law creating any legal status, rights, benefits, or duties that are substantially equivalent to those provided under Utah law to a man and a woman because they are married." Utah Code Ann. § 30-1-4.1(1)(a) & 1(b).  That statute does not just discriminate against individual who self identify as homosexual and seek man-man or woman-woman marriage. Instead, the statute discriminates equally against those who prefer man-inanimate object, man-animal, and man-multi-person marriages as well. The Defendants appear to be in a total state of denial and

the best argument they can offer is that because at least one state has not got around to authorizing man-machine marriage, then they are not required to authorize it, when such a position completely offends and impeaches the holding in *Obergefell v. Hodge*, 192 L. Ed. 2d 609 (2015).

27. Different-sex individuals in Utah have to continue to press for the recognition that gay, lesbian, bi-sexual, transexual, and straight people have, including the right to marry and protection against hate crimes. [22]

28. As different-sex individuals continued to fight to obtain equal rights given to individuals who self-identify as gay, lesbian, bi-sexual, and heterosexual in Utah, proponents of different-sex marriages in other states were beginning to be successful in having laws barring other-sex marriage struck down as unconstitutional. For example, in Massachusetts, the Supreme Judicial Court of Massachusetts, on November 18, 2003, held the denial of marriage licenses to same-sex couples violated provisions of the Massachusetts Constitution guaranteeing individual liberty and equality, and was not rationally related to a legitimate state interests. See *Goodridge v. Department of Public Health*, 798 N.E.2d 941 (Mass. 2003). Surely, the Massachusetts' court was also thinking about the interest of all the other non-obvious classes of sexual orientation when it floated its opinion to advance a new form of marriage that did not involve one man and one woman but an identity narrative based on sexual orientation and a phobia of feeling shame.

29. Fearing that Utah would be forced to sanction gay marriages and other different-sex marriages legally performed in other states and/or that the Marriage Statutes might be held unconstitutional in light of cases in state and federal courts in other states, opponents of same-sex

---

[22] Of course, as demonstrated in Orlando gay marriage has made the hate crimes worse and even more justifiable because the United States is objectively ratifying evil conduct in the eyes of billions of people.

and other-sex marriage began an effort to put an initiative on the November 2, 2004, ballot that would amend the Utah Constitution to ban same-sex and other-sex marriage, arguing that all different-sex marriage ban would be on firmer ground if it were in the Utah Constitution. This law was not designed to codify religion but to prevent moral relativist from using government to codify their private views on marriage that are predicated on their religious ideology and their animosity towards Christianity.  By some miracle due to selective blindness, the laws have been construed to only single out gay and lesbian individuals because they happen to make up the largest minority of the sexual orientation with the most organized voice of opposition.  These statutes do not just block man-man and woman-woman marriage in their original form but all kinds of other marriage arrangements to include the Plaintiff's.

30. In the 2004 General Session of the Utah Legislature, the Utah Legislature passed a Joint Resolution of Marriage proposing to amend the Utah Constitution to add a provision relating to marriage (the "Resolution"). To suggest that the "resolution" only targeted individuals who prefer same-sex marriage is as false as equally false as the suggestion that sexual orientation involves immutable traits.  The resolution banned all forms of marriage for violating the community standards and offending transcultural universal law, which is the cornerstone of the United States Constitution and the vast majority of our laws. In that Resolution, two-thirds of all the members elected to each of the legislative houses voted to propose to enact an amendment to the Utah Constitution, Utah Constitution Article I, Section 31, to read: "(1) Marriage consists of only the legal union between a man and a woman. (2) No other domestic union, however denominated, may be recognized as a marriage or given the same or substantially equivalent legal effect." In addition, the Resolution directed the Utah Lieutenant Governor to submit the

proposed amendment to the voters of Utah at the next regular general election, which was on November 2, 2004, and provided that, if a majority of the voters approved the amendment, it was to take effect on January 1, 2005. Ten other states had similar constitutional amendments on their ballots for the 2004 general election.[23]

31. The proposed constitutional amendment was placed on the ballot in the November 2, 2004 general election and became known as Constitutional Amendment 3 ("Amendment 3"). The Utah Voter Information Pamphlet General Election November 2, 2004 ("Pamphlet"), prepared under the direction of the Lieutenant Governor, stated that Amendment 3 would do the following:

Third, the Amendment prohibits any other domestic union from being given the same or substantially equal legal effect as is given to marriage between a man and a woman. Presently, when a man and woman marry, they receive certain rights, benefits, and obligations provided in the law. A married man and woman receive those rights, benefits, and obligations automatically, by operation of law and solely by virtue of being married. The Amendment prohibits a domestic union from being given those same or similar rights, benefits, and obligations. The scope of that prohibition may be more precisely defined by Utah Courts as they interpret the provision in the context of lawsuits that may arise.

By no means does the law merely single out people who self-identify as homosexual who want to marry. The law bars all other forms of marriage from recognition. The law accords with the first amendment establishment clause and 14th amendment in that natural marriage requires no faith to accept as plausible and the Courts do not seem included to really give civil rights on the basis of sexual orientation.

32. Thus, the express and stated purpose of the ballot initiative was not merely to single out gay men and lesbians alone by stripping them of federal constitutional protections that apply to all

---

[23] Justice Kennedy had the gall to call the majority of the citizens in Utah who voted for the amendment as bigots in *United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 ) in *Obergefell v. Hodge*, 192 L. Ed. 2d 609 (2015) as a way to marginalize them for not thinking like he does about marriage.

other citizens. The ballot initiative was crafted to single out all people who want to marry something other than a member of the opposite sex.

33. The proponents of Amendment 3 – Utah State Legislators – stated that Amendment 3 was necessary to: "maintain[] public morality, the justified preference for heterosexual marriage with its capacity to perpetuate the human race and the importance of raising children in that preferred relationship." *Id.* at 36. They further stated that Amendment 3 would ensure the continuation of "the ideal relationship where men, women and children thrive best and that is an enduring natural marriage between a man and a woman." *Id.* Thus, the express and stated purpose of Amendment 3 was to codify the truth about the way things are and the way we are. Yet, it could be asserted that the purpose of the Amendment 3 was to further privately held moral views that indicates that proponents of animal-sex, inanimate object-sex, same-sex, different-sex, multi-person-sex, human trafficking, and child-rape were not moral and were inferior to heterosexual couples. But the truth is that it was the moral relativist and homosexuals who have made this entire matter a religious war - as they sought to use government to codify their religious ideology. [24]

34. It was subsequently reported that 65.86% of the ballots cast on November 2, 2004, voted to amend the Utah Constitution to add Amendment 3. The Amendment went into effect on January 1, 2005.[25]

---

[24] Moral relativist on bench have taken their private morality and replaced traditional morality as a basis of law with it. In effect, the moral relativist have asserted that no one's version of morality matters when it comes to passing laws but their own. It is one of the most egotistical positions ever floated in American Jurisprudence. There are two types of people in the world. People who make absolute truth claims and setup binaries and people who do but don't know that they are. The moral relativist fall into that second category and the laws in dispute here were designed to safeguard against those in office who are trying to use government to legitimize their self-justifying religious worldview that is out of step with transcultural universal law and morality.

[25] After *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), it can be said that Five Supreme Court justices, liberal academia, a mindless self-interested media, and Anti-American President have managed to disenfranchise the electorate in the state of Utah through of series of power plays that are based on volumes of dishonesty, fraud, and delusions that violate the first amendment establishment clause, threaten the integrity of the racial civil rights

35. To legitimize the Plaintiff's request to exercise his existing right to marry an inanimate object under the 14th amendment will further give credence to gay marriage. But to critique the legal basis for man-object marriage will destroy legal basis for man-man and woman-woman marriage. Maybe that would be good because gay marriage is not producing the proselytizing desired effects. The Federal Government is threatening to blackmail the state if it does not embrace its transgender bathroom policies, Judges like Judge Roy Moore are not allowed to speak out against other forms of marriage that violate the establishment clause, and legislatures continue to present policies that will further marginalize and oppress Christians. [26]

36. Since January 1, 2005, same-sex individuals and other-sex individuals in Utah have been denied marriage licenses on account of Amendment 3, until *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015). Now only different-sex individuals are denied marriage licenses not individuals who are interested in same-sex and opposite-sex marriage. Under Amendment 3, different-sex individuals who legally married in other states and countries, who are also Utah citizens, do not have their marriages officially sanctioned by the State of Utah. In other words, if a different-sex individual marries and inanimate object in another state or country, that marriage is not recognized in Utah. Utah citizens who are married under the laws of other states and jurisdictions are treated differently than Utah citizens that are homosexual and heterosexual individuals who are married under the laws of other states. They are not afforded the same protections, rights and official sanction as such heterosexual and homosexual individuals who are married because the State feels that gay marriage is acceptable but not man-object marriage. But the State has no

---

movement of the 1960s, and insincerely use the 14th amendment to accomplish ends that violated the obscenity codes and first amendment to begin with.

[26] http://www.wnd.com/2016/06/california-to-punish-faith-based-colleges-for-holding-wrong-views/

explanation for why its new found feelings on gay marriage should be privileged over the Plaintiffs when it comes to man-object marriage. Feelings as a basis for law is completely irrational.

37. Amendment 3 and the Marriage Discrimination Statutes have created a legal system in Utah in which civil marriage is restricted solely and exclusively to those who self-identify as gay and straight individuals, while machinists, beastalists, and polygamists are arbitrarily excluded. In addition, under Amendment 3 and the Marriage Discrimination Statutes, different-sex individuals who are citizens of the State of Utah are not entitled to the rights and responsibilities acquired through marriage by operation of law, even if they are legally married in another state or country. The inability to marry and the denial of official sanction of a legal marriage in another state, denies different-sex individuals the personal and public affirmation and dignity interest that accompanies marriage.[27]

38. Denying different-sex individuals the right to marry, denies them the legal protections afforded married individuals, such as the spousal exception to the hearsay rule of evidence, additional benefits awarded to wounded warriors who are injured in combat, child custody, inheritance and spousal medical decision rights, that are granted to individuals who self-identify as gay or straight by operation of law upon marriage.

<u>Marriage is a Fundamental Right For All Individuals Or Marriage Is Not A Fundamental Right But An Institution Available To One Man And One Woman</u>

---

[27] The Plaintiff's request to marry an inanimate object is objectively less disturbing than a man's request to marry a man and force society to call him his wife. At the very minimum, the Plaintiff's request to marry an inanimate object is as valid as a man's request to marry a man, until or unless the state demonstrates that secularism is a religion and all other forms of marriage violate the establishment clause since they are based on faith and not self-evident truth.

39. The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein.  The Plaintiff has the same fundamental right to believe that he is in love with and can marry an inanimate object, while self-identifying as a machinist with legal protection, just as *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014) has the right to believe that he is in love with Sbeity and can make him his legal wife, without violating the first amendment establishment clause. [28]

40. Marriage is a supremely important social institution. It is so important that the monkey with the definition to establish relativism as the National religion is Constitutionally unconscionable. The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men," but that position was taken in discussing man-woman marriage in *Loving v. Virginia,* 388 U.S. 1, 12 (1967). "Marriage is widely regarded

---

[28] If both of forms of marriage are legally possible, then "love wins" and the integrity of the 14th Amendment is in tact. If just one of those scenarios is legally recognizable, then end result of *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) and *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 ) is that fraud has won. People who believe that they are born gay, really do not care about marriage, they just want everyone to live in the same bubble and cosmos they dwell in. The homosexuals would have allowed the Plaintiff to intervene otherwise in *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014).  This is no different than the Muslims who literally will kill a person who refuses to convert to their religion.  Yet, there are millions of Americans who do not want to live under the thumb of a caliphate of Islam or a caliphate of moral relativism. After all, the premises floated by both religions are rife with illogical reasoning and both have proven to be a complete disaster when used as the bases for law and policy. Relativism has about as much in common with the truth as Nazism. What we have learned from Justice Kennedy in *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) and *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) is (2) to suggest that "doctrine does not matter" is itself a "doctrine;" (2) to say that no set of truth claim as a basis for law is superior is a set of truth claims that is vying for superiority - it is a way of one group to get their private moral code to come out on top and for relativist to feel better about their sophistication and jadedness; (3) people who are intolerant of intolerant people are themselves incredibly intolerant; (4) people who are judgment towards judgmental people are themselves judgmental.  President Obama, Attorney General Lynch, Justice Ginsburg, Justice Kennedy are incredibly dogmatic about not being dogmatic. Why should anyone - to include the State Defendants and the Federal Court in Utah - even bother listening to them (unless career aspirations were the focus). If truth were actually relative, then positions of relativist are relative, which means that their positions are meaningless. What is not meaningless is that the Court has a duty to enforce the rule of law and the Constitution of the United States and to defend the truth. As it stands all forms of marriage besides actual marriage violates the first amendment establishment clause, or alternatively, the legal definition of marriage must include the sexual preferences of all individuals based on their identity narrative or the Constitution is dead and sedition is legally warranted or putting moral relativist on trial for treason is under 18 US Code Chapter 115 is legally proper.

as the definitive expression of love and commitment in the United States." Amendment 3 and the

Marriage Discrimination Statutes "reserve[] the most socially valued forms of relationship

(marriage) for opposite-sex couples." *See Perry v. Schwarzenegger,* 704 F. Supp.2d 921, 974

(N.D. Cal. 2010).

41. Different-sex individuals are identical to same-sex a individuals in the characteristics

relevant to the ability to form successful marital union. To suggest otherwise is intellectually

dishonest, since the Courts were forced to frame marriage as an individual, personal,

fundamental, and existing right.[29]

42. Like opposite-sex individuals and same-sex individuals who are married, different-sex

individuals have happy, satisfying relations and form deep emotional bonds and strong

commitments to their preferred spouse.[30]  The question as to whether these relationships deserve

legal recognition is a different matter.  Standardized measures of relationship satisfaction,

relationship adjustment and love do not differ depending on whether a couple is same-sex,

different-sex, or opposite-sex." *Id.* at 967. Yet, even the Plaintiff admits that the such a positions

does not get those who self-identify as gay, machinists, polyamous, and beastialist around the 1st

---

[29] *Zablocki v. Redhail,*434 U.S. 374, 384 (1978)(fundamental right); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940 (1974)(personal choice); *Loving v. Virginia*, 388 U.S. 1, 12 (1967)(existing right); *Lawrence v. Texas,*539 U.S. 558 (2003)(intimate choice). It is not very difficult to understand that the Plaintiff is an individual who is seeking to exercise those rights in step with the holding in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015). Different-sex and same-sex individuals, who are married, have the same procreative potential with their spouse, and just because homosexuals are wrongfully using government to attempt to legislate away their feelings of shame and inadequacy does not make that less true.

[30] Yet, that does not necessarily mean that the Government should legally recognize other forms of marriage, and furthermore, that argument is a bit ridiculous because there is no way to measure degrees of marital happiness.  But the straightforward science of neurotransmitters,  like dopamine, beta fosb, oxytocin, serotonin is clear - whatever a person has sex with they bond with. There are men who buy sex bots from "real dolls" that are way more beautiful than a girl they could score in real life. The men become classically conditioned to prefer having sex with objects that look and feel like a human because the brain cannot tell the difference between fake and real.http://www.cnn.com/2016/02/18/living/cnnphotos-sex-dolls/.

amendment establishment clause dilemma and the legal validity of marriage has never been about satisfaction or degree of happiness.

43. Amendment 3 and the Marriage Discrimination Statutes "place[] the force of law behind stigmas against machinists, beastialists, and polygamists, suggesting that they do not have intimate relationships similar to homosexual individuals; and that different-sex individuals are not as good as homosexual and heterosexuals; and different-sex individuals marriages do not deserve the full recognition of society that has been given to gay and straight married individuals. *Id.* at 973. In their post Obergefell modified form, Amendment 3 and the Marriage Discrimination Statutes "single[] out different-sex individuals who are male and female and legitimate[] their unequal treatment." Man-object marriage, man-man marriage, woman-woman marriage, man-animal marriage, man-multiperson marriage all deserve to be treated equally or the 14th amendment is not in control - judicial tyranny is.[31]   Amendment 3 and the Marriage Discrimination Statutes "perpetuate[] the stereotype" that [machinists, beastialists, and polygamists] are incapable of forming a sexual bond with something other that one member of the same or opposite sex and that are they "not as good of parents" as straight and homosexual persons. *Id.* at 979. [32]

44. The Plaintiff became addicted to pornography after being exposed on a filterless device without his consent that was distributing misleading domain names.  This exposure ultimately

---

[31] What is not on the table is whether homosexuality, beastiality, objectomy, or polyamy marriage should be criminalized. The first question is whether these marriages that are not based in fact but on feeling and self-identity narrative are legally cognizable under the first amendment establishment clause and the second question is on what possible basis could civil rights be denied to individuals in the non-obvious classes of sexual orientation is sexual orientation is a basis for suspect classification.

[32] Of course, the Plaintiff offers that sentimental emotional appeal as the gay litigants did in hopes that it too will exploit the Court's emotion and force it to disregard the 1st amendment establishment clause.

lead down a path where the Plaintiff cultivated a sexual preference for sex with objects. Just as a

woman can acquire a thirst for another woman after opening the door to sexual acts in that

regard, the Plaintiff cultivate a sexual orientation predicated on immutable traits that those who

self-identify as homosexual allege that they have. The Plaintiff now seeks to marry an inanimate

object hoping that society will afford him and his preferred spouse the same dignity interest that

man-man, woman-woman, and man-woman relationships have acquired.[33]

45. On June 16, 2016, the Plaintiff applied for a marriage license from Defendant Thompson, the

Utah County Clerk but was denied because his marriage request was outside of the narrow

definition handed down by the Supreme Court in accordance with their phony tolerance

narrative. That is, the Plaintiff's marriage request was denied because he is one man seeking to

marry one machine and not one man seeking to marry one man or one woman. The Plaintiff

cannot be expected to change his sexual orientation because anyone feels that it is morally

repugnant in accordance with the holding in *Lawrence v. Texas,* 539 U. S. 558, 575 (2004). And

there is zero basis to deny him these civil rights in accordance with *United States v. Windsor*,133

S. Ct. 2675, 186 L. Ed. 2d 808 (2013) and *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) -

otherwise the legal basis for same-sex marriage is non-existent and the Courts have been

peddling fiction in hopes of imposing their irrational religious worldview onto society through a

series of intellectually dishonest and exploitative power plays so that they can feel better about

having banked their entire life on the idea that there is no such thing as absolute truth.

---

[33] Giving the Plaintiff marriage rights will further establish the legal plausibility of gay marriage, but denying him those rights - whether by abuse of the rules of civil procedure or any other means - will demonstrate that the Judiciary is knowingly and wilfully engaging in fraud. The Senate and Congressional Judiciary members must impeach these kinds of judges or a military response is warranted to restore Constitutional order.

46. The Plaintiff has a valid driver's license at the time he approached the Clerk Thompson. He had the filing fee funds on him - ready to pay for the marriage license. Nevertheless, the Plaintiff was denied the right to marry the spouse of his choosing because the Plaintiff's marriage request was outside the narrow definition of marriage, despite the decision in *Obergefell v. Hodge*, 192 L. Ed. 2d 609 (2015).[34] The Plaintiff asked Clerk Thompson if he personally believed that all forms of marriage outside of actual marriage violated the 1st amendment establishment clause. Clerk Thompson said that he felt that the Attorney General Reyes could better answer that legal question.

47. It is an unproven faith based assumption that marriage should only be between one man and one woman; one man and one man; and one woman and one woman. This belief comes from the religious dogma of moral relativism advanced by the state. Moral relativism is allowing those who are currently in power to make up the law and truth as they go along due to a superiority complex and unorthodox entitlement that amounts to toxic arrogance void of transcending equitable plausibility.[35]

---

[34] The Plaintiff and Defendant Thompson spoke at length directly. Defendant Thompson informed the Plaintiff that he was following the instruction and guidance of the Governor and Attorney General provided to him following the decision in *Obergefell*. The Plaintiff was denied a marriage license because he was not one man seeking to marry one man or one woman. The Plaintiff's marriage request fell outside the current narrow definition of marriage. Defendant Thomas could not explain why man-man marriage and woman-woman marriage was legally valid, but man-object, man-animal, and man-multiperson marriage was not.

[35] If innate self-evident morality that stems from the Creator referred to in the Bill of rights and natural law that is woven into the fabric of the universe by God Himself and reflective throughout everyday life should be the basis for law and reality, then obviously same-sex marriage is as equally evil and offensive to the truth of our nature as the Nazis policy of liquidating Jews. Accordingly, either the state is actively participating in tyrannical evil and worthy of violent overthrow or the state should be opposed to gay civil rights with the same vigor that the state arbitrarily opposed man-machine marriage. If a man can be a wife and use the ladies restroom in the presence of female minors in violation of decency laws, how can the state argue that machines are not people too who are capable of being married? Since a corporation in the state of Utah is a "person" - and it is under the law - why can't an inanimate object that is personal property that is subject to marriage under the personal choice, individual right, fundamental right, and existing right of marriage. What we have here on our hands is a Judicially authorized scam where "love" did not "win" in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) - fraud did. "Fraud won" at the expense of truth, justice, and the Constitution. Our citizens are incredibly confused over this narrative of lies that the Court's

As a result of Amendment 3 and the Marriage Discrimination Statutes, the Plaintiffs is barred from marrying the object he wishes to marry.

48. The Plaintiff's inability to marry or to have his relationship recognized by the State as a marriage with the protections, dignity and respect accorded to married same-sex and opposite-sex individuals has caused him and others significant hardship, including but not limited to the deprivation of rights guaranteed by the Fourteenth Amendment and Utah state laws afforded opposite-sex and same-sex married individuals, and subjected him to severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma.[36]

49. Each day that the Plaintiff is denied the freedom to marry, and is denied the State's sanction of his out of state and overseas marriage, he suffers irreparable harm as a direct result of Defendants' violation of his constitutional rights that he physically fought for in Operation Iraqi Freedom.

50. The first amendment aside, if the enforcement of Amendment 3 and the Marriage Discrimination Statutes is not enjoined even in its altered state following *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), the Defendants will continue to enforce an unconstitutional law against Plaintiff and others who do not fit into the narrow minded and culturally cultivated

---

maliciously cultivated. The Courts, aided and abetted by academia, media, and anti-truth President have intentionally spun a web of lies and fraud through the use of distorted semantics that violates transcultural truth, making those who are currently in power part of a regime that is as equally vile and nefarious as Islamic caliphate, and thereby, a precipitous threat to National Security interest from the inside out. Those participating in the perpetuation of this fraud should be prosecuted without immunity for violating their Constitutional oath of office.

[36] The media is relentlessly bashing the Plaintiff and knowingly perpetuating falsities about him to cast him in a bad light because he refuses to convert to their version of religious moral relativism. The convert or die approach taken by the media is basically the same policy that ISIS use - although the jihadist will actually decapitate an infidel, not just metaphorically. It is estimated that the denial of the right to marry, deprives machinists, beastialists, and polygamists individuals of literally hundreds of protections and rights that opposite-sex and same-sex married individuals enjoy. If the Court wants to see what actual animus looks like from the so called tolerant moral relativist consider this hit piece -
http://www.thedailybeast.com/articles/2016/04/21/meet-the-anti-lgbt-bigot-marrying-his-computer.html

categories of "straight" and "gay," thereby depriving them of their constitutional rights under the Fourteenth Amendment at the expense of the legal integrity of the gay marriage plight. The declaratory and injunctive relief sought by Plaintiff, on the other hand, will require Defendant Thompson to issue him a marriage license based on his identity narrative in an equal manner as they are issued to those who self-identify as gay.  Or Secondarily, Defendants Herbert and Reyes will have to officially sanction the out of state and overseas marriage of Plaintiff as valid within the State of Utah.

51. In the alternative, Court must enjoin the state from recognizing any man-man, woman-woman, man-object, man-animal, and man-multi-person marriage for being equally removed from reality and in violation of the Establishment clause and the state and federal obscenity code - which the state has a compelling interest to maintain.

## II. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF: ESTABLISHMENT CLAUSE

52. The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein. The laws that define marriage between one man and one woman do not violate the establishment clause because they codify facts and not unproven faith basis assumptions that are entirely religious. The current definition of marriage after *Obergefell v. Hodge,192* L. Ed. 2d 609 (2015) violates the 1st amendment establishment clause and the 14th amendment for arbitrarily excluding the non-obvious classes of sexual orientation.

53. The First Amendment to the United States Constitution states, "Congress shall make no law respecting an establishment of religion . . ."

54. This prohibition is extended to the states through the Fourteenth Amendment. The laws in dispute here in their original form were enacted for the purpose of preventing relativist from establishing a definition of marriage based upon their personal, shallow, narrow, and exclusive religious beliefs which are predicated on feelings of shame and inadequacy and crafted as a personalized assault on Christianity.

55. The current definition of marriage is based on the religion of post modern individual relativism that stems from the enlightenment tradition and is absolutely a religious doctrine. Secularism has progressed into a religious dogma that is based on semi-religious unproven faith based assumptions and naked assertions, which cannot be used to antagonize transcultural religions like Christianity.

56. The primary effect of the above legislation was to codify the truth about the way humans are designed and the way things are.  The moral relativist who presided in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) and the LGBT community have reduced marriage into a religious matter. They are the ones who used our government to impose their religious ideology on everyone else without a plausible compelling interest, leaving no room for objection.

57. The current definition of marriage absolutely result in an excessive government entanglement with the religion of moral relativism. Moral relativism put man at the center of the universe instead of the Creator who is reflected in the Bill of rights, when Amendment 3 and the Marriage Statutes simply codified fact and gave benefits to marriage couples who are uniquely situated.

58. To suggest that sexual orientation is a basis for changing the law is a naked assertion that is implicitly religious in so far it cannot be proven that sexual orientation involves immutable traits and genetics. Such ideas amount to naked assertions that must be taken on faith and are

implicitly religious. Although it is true that laws that attempted to establish the legal plausibility

of man-man, woman-woman, and man-object marriage all equally violate the first amendment

establishment clause, expanding the definition of marriage to include all forms of sexual

orientation and not just the largest minority (the gays) and the majority (the straights) at the very

least accords with the equal protection and due process clause. Just as the gays have tried to

legislate away their feelings of shame and inadequacy for a lifestyle remains criminalized by

other Nations, the Plaintiff has the same right to make the government attempt to legislate away

feelings of guilt and inadequacy as a result of self-identifying as a machinist.

59. Identity narratives involving sex matters are implicitly religious and to give national

recognition to some identity narratives and not other violates both the establishment clause in

that the state lacks a narrowly tailored government interest to permit man-man and

woman-woman marriage but not other forms to include man-object marriage.

### SECOND CLAIM FOR RELIEF: FREE EXERCISE SUBSTANTIAL BURDEN

60. The Plaintiff repeats and incorporates by reference all of the above allegations of this

Complaint as though fully set forth herein. The laws and policies in dispute here violates

fundamental liberties that are protected by the Free Exercise Clause of the First Amendment to

the United States Constitution, both on its face and as applied to the Plaintiff and the other

members of non-obvious sexual orientation.[37]

---

[37] Now that it is 2016, it is clear that keeping religion out of the public square is impossible. The real question is "which religious doctrine and figures should be protected, and which ones should be declared as imposters. There are two types of people in the world, people who make exclusive truth claims and set up binaries, and those who do it but do not not that they are. It is a fact that all people and all governments are religious. But not all governments are under the right religion. The religion that is relevant because it is based on that which is true period. Even if those in charge have decided that we are no longer a Christian Nation, we are still a Constitutional Nation, and since man-man marriage is legally valid so is man-machine marriage. In arguing otherwise, the state or court will be arguing against the legal bases for man-man and woman-woman marriage.

61. The Plaintiff's sincerely held religious beliefs bars him from marrying a person of the same-sex as the LGBT community wants everyone to do. The state should not compel him to marry a member of the opposite-sex or remain single and miss out on a litany of benefits and protections that were originally designed to encourage the survival of traditional marriage. The current definition of marriage is not neutral.

62. The definition of marriage creates government-imposed coercive pressure on the Plaintiff to change  his orientation or violate his religious beliefs, being subjected to higher taxes and other fines, imposing a substantial burden on the Plaintiff's religious exercise.

63. Absent injunctive and declaratory relief against the statutes in their modified form, the Plaintiff will continue to be harmed. The state lacks a  compelling government interest to deny the Plaintiff's marriage request if man-man and woman-woman marriage are actually Constitutionally sound to being with.

64. The current definition of marriage is not narrowly tailored to any government interest and amounts to a baseless imposition of the impeached morality value judgments onto the Plaintiff by individuals in government, who lack the ability to even define what truth and justice are on the basis of an objective standpoint.

65. The current marriage laws and policies in dispute are not the least restrictive means for furthering the Defendant's stated interest.  Since a primary purpose of amending the original definition was to try and legislate morality by making our citizens afford dignity to otherwise obscene and unnatural sexual practices of individuals, the Plaintiff's marriage request warrants the same legal respect as same-sex marriage. Allowing the Plaintiff to marry an inanimate object will add to the so called "tolerance narrative," but denying the Plaintiff's request will

demonstrate that "love" did not "win" as a result of *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), fraud did. "Fraud won."

**THIRD CLAIM FOR RELIEF: FREE SPEECH**

66.  The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein.  While obscene speech has never been protected speech, and although all forms of marriage outside of "man-woman" marriage amounts to a form of state sanctioned and the authoritative promotion of obscenity in action, the state has no right to either (1) remain single and miss out of benefits; (2) lose out on a dignity status predicated on egoism; or (3) be forced to marry a member of the same-sex or opposite-sex.  Since the goal of expanding the definition of marriage is in part to legislate away feelings of shame and inadequacy, the Government must take steps and go further.

67.  The current definition of marriage tells the Plaintiff that he is more unusual than those who self-identify as homosexual for long enough to secure a marriage license.  If the state is really going to argue that man-machine marriage is morally repugnant and implausible, and therefore, subject to no support, it must say the exact same thing about man-man and woman-woman marriage.  If men can be wives and women can be husbands than so can objects. While being relegated to a second class citizen status, the Plaintiff, is being deprived of a dignity interest vested in the bill of rights due to what amounts to fraud perpetrated by the Judiciary.

68. The laws and policies in dispute, as applied in this case and as interpreted by the Defendants, violates the First Amendment to the United States Constitution.

**FOURTH CLAIM FOR RELIEF: VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION FREEDOM OF SPEECH - COMPELLED SPEECH**

69.  The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein.  Pursuant to the Plaintiff religious beliefs, he is convinced that marrying an inanimate object is as legally and factually valid as a man-man and woman-woman marriage. Man-object marriage no more discriminates against man-woman marriage on the basis of gender than man-man marriage does.

70.  The Statutes, amendments, and policies at issue are not narrowly tailored to a compelling government interest.

71.  The current definition of marriage forces the Plaintiff to change his sexual orientation under a standard that is not imposed on people who have adopted the unproven faith semi-religious faith base assumption that they were "born gay."

72. Absent injunctive and declaratory relief against the statutes, the Plaintiff has been and will continue to be harmed.

### FIFTH CLAIMS FOR RELIEF FIRST CLAIM FOR RELIEF: DUE PROCESS VIOLATION

73. The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein. The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const Amend XIV, § 1. Individuals are protected by the Due Process Clause from arbitrary government intrusion into life, liberty and property.

74. Amendment 3 and the Marriage Discrimination Statutes violate fundamental liberties that are protected by the Due Process Clause of the Fourteenth Amendment, both on its face and as

applied to the Plaintiff and others with different-sexual orientations who self-identify as something other than "gay" and "straight."

75. The freedom to marry is one of the fundamental liberties protected by the Due Process Clause of the Fourteenth Amendment, but that position likely only applies to man-woman marriage. Amendment 3, the current policies advanced by the Governor and Attorney General following *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015), and the Marriage Discrimination Statutes violate this fundamental right protected by the Due Process Clause because it prevents the Plaintiff and other from marrying the persons, creatures, and things of his or her choice and from having their marriages entered into in other states and countries from being recognized in Utah; and the choice of marriage is sheltered by the Fourteenth Amendment from, Utah's unwarranted usurpation of that choice.

76. Amendment 3 and the Marriage Discrimination Statutes impinge on fundamental liberties protected by the Due Process Clause by discriminating, not merely against gay men and lesbians, but all of people in the non-obvious classes of sexual orientation, denying all of them the opportunity to marry civilly, to have their civil marriage in another jurisdiction legally recognized, and to enter into or maintain the same officially sanctioned family relationship with their preferred spouse as opposite-sex and same-sex individuals are currently permitted. For example, by denying those individuals the same "marriage" designation afforded to opposite-sex and same-sex individuals who married, the State of Utah is stigmatizing beastialist, machinists, and polygamists, as well as their children and families, and denying them the same dignity, respect, and stature afforded officially recognized opposite-sex and same-sex family relationships.  A paramount question is whether the pride and feelings of an individual is more

important than the first amendment establishment clause. Yet under the current definition of marriage where the first amendment has been discarded, the marriage discrimination denies those in the different-sex class the legal protections afforded by Utah law to opposite-sex and same-sex married individuals on a completely arbitrary basis which amounts to a bare desire to harm a politically unpopular group.

77. Because the Plaintiff seeks to exercise his fundamental right to marry and to have his out of state marriage in another state legally recognized, his claim that Amendment 3 and the Marriage Discrimination Statutes violate his Due Process rights is subject to strict scrutiny. Further, it is irrelevant that the Utah voters voted for Amendment 3 because fundamental liberties may not be submitted to a vote if the 14th amendment is to be prioritized over the 1st amendment and if sexual orientation is actually a civil rights matter. Election outcomes do not determine fundamental rights protected by the Fourteenth Amendment.

78. Amendment 3 and the Marriage Discrimination Statutes are unconstitutional under the Due Process Clause because they are not narrowly tailored to a compelling government interest, as applied to all variations of sexual orientation, not just the majority and true minority.

79. As a result, the Court, pursuant to 28 U.S.C. § 2201, should construe Amendment 3 and enter a declaratory judgment stating that this law and any other Utah law that bars different-sex marriage, including the Marriage Discrimination Statutes, violate the Due Process Clause of the Fourteenth Amendment, and should enter a permanent injunction enjoining enforcement or application of Amendment 3 and any other Utah law that once barred same sex-marriage and now continues to bar different-sex marriages without a legal bases, and compelling Defendants

to legally recognize my marriage to an inanimate object from another jurisdiction or to issue a

brand new marriage license in the State of Utah.  Or alternatively, the Court must

### SIXTH CLAIM FOR RELIEF: EQUAL PROTECTION RIGHTS VIOLATION

80.  The Plaintiff repeats and incorporates by reference all of the above allegations of this

Complaint as though fully set forth herein.[38]  The Equal Protection Clause provides that no state

shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

Amend XIV ,§ 1. The Fourteenth Amendment's equal protection guarantee embodies the

constitutional ideal that "all persons similarly situated should be treated alike." *City of Cleburne*

*v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The laws in dispute once discriminated

against same-sex individuals now continues to discriminate against the Plaintiff without any

valid basis whatsoever.

81. Amendment 3 and the Marriage Discrimination Statutes violate the Equal Protection Clause

of the Fourteenth Amendment, both on their face and as applied to the Plaintiff.

82. For purposes of the Equal Protection Clause, Amendment 3 and the Marriage Discrimination

Statutes should be subject to heightened scrutiny because individuals, beyond just gay and

straight, are the type of minority strict scrutiny was designed to protect in the first place - that is

only if sexual orientation is actually a basis for suspect class status. Sexual orientation is a factor

---

[38] Perhaps there was a reason why the first amendment was listed first in the United States Constitution. If other forms of marriage besides actual marriage or fact based marriage between one man and one woman does not violate the establishment clause, then an analysis of the 14th amendment applies. Of course, it practically goes without saying that in light of the holdings in *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 ) and *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) if individuals who self-identify as "gay" are allowed to marry their spouse of choice, then individuals who self-identify as machinists, beastialists, and polygamists must be allowed to marry the spouse that their feelings tell them is ultimate object of desire. Allowing individuals in the non-obvious class of sexual orientation to marry in accordance with their identity narrative will strengthen the legal plausibility of gay marriage, but to deny this right to the Plaintiff simply because the Court or state feels that the request is morally repugnant will be catastrophic for the legal credibility of gay marriage and transgender rights. In fact, the federal government's attempt to blackmail the state of Utah for not giving into to its transgender bathroom policy might completely collapse.

that "generally provides no sensible ground for differential treatment," *Cleburne,* 473 U.S. at 440-41, and sexual orientation meets all four factors requiring heightened scrutiny for a classification: (1) other-oriented people have suffered a significant history of discrimination in this country: (2) sexual orientation generally bears no relation to ability to perform or contribute to society - this is true beyond gay and straight; (3) discrimination against other-oriented people is allegedly based on an immutable or distinguishing characteristic that defines them as a group; and (4) not withstanding a measure of recent progress, other-oriented people are minorities with limited power to protect themselves from adverse outcomes in the political process, as demonstrated by Amendment 3.[39]

83. Under the heightened scrutiny standard, Amendment 3 and the Marriage Statutes in their post *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) altered form violate the Equal Protection Clause because they are not "substantially" related to an important governmental purpose. There are no distinctions among lesbians, gay men, machinists, beasitalists, polygamists, and heterosexuals that amount to undeniable and real differences that the government might need to take into account in legislating. The real purpose behind Amendment 3 and the Marriage Statutes is first to stop moral relativist from using government to codify their private morality and secondly

---

[39] The Court is being asked to determine whether sexual orientation really does involve immutable traits as the Supreme Court in *Lawrence v. Texas,* 539 U. S. 558, 575 (2004) floated. The evidence shows that the it is a complete and total lie. The Plaintiff will parade ex gays into court by way of sworn testimonials. Many of these ex gays were one time gay activist before converting away from that identity narrative. (See Pastor Charlene Cothran - https://www.youtube.com/watch?v=Y1VtU2X-bIk and Greg Quinlan http://ex-gaytruth.com/)  Those who support gay rights have zero explanation for the fact that these former gay activist have made a complete 180 on their belief that they were born gay. If the Court plans on continuing to advance this sexually exploitative fiction, the public is going to see through it and hold the Court in contempt for racketeering in wire fraud and obscenity. By using the government to legitimize other forms of marriage makes it easier for children to open the door to sexual experiences that violate the truth about our nature and the way humans are designed. The question presented is whether expanding the definition of marriage is eroding freedom, and giving homosexuals extra tools to groom individuals into buying into their religious worldviews on morality, sex, and marriage in a manner that violates the first amendment establishment clause and has the additional disadvantage of being dehumanizing and depersonalizing by definition.

prejudice, not just against gay men and lesbians, but all non-straight people based on private moral views that are based entirely on naked assertions and unproven faith based assumptions. Clearly, people in the United States are free to have whatever moral views they want but once the government starts codifying the religious views of one group - it must codify the religious views of all groups.  Now that the Supreme Court found what it did in *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015), all of in the true minority of sexual orientation, to include the Plaintiff, must be allowed to marry in step with their excluded sexual orientation no matter how peculiar some may find it.

84. Even if Amendment 3 and the Marriage Discrimination Statutes are not analyzed under the heightened scrutiny standard, they still violate the Equal Protection Clause because the classification drawn by Amendment 3 and the Marriage Discrimination Statutes between opposite-sex, same-sex, and different-sex individuals is not rationally related to a legitimate state interest. A state does not have a legitimate interest in disadvantaging an unpopular minority group under the sexual orientation class merely because the group is unpopular, or the private views that different-sex individuals hold are morally inferior to same-sex and opposite-sex individuals or are inferior because there is something psychiatrically wrong and inept with individuals who want to marry something other than a member of the same or opposite sex. There is no question that because the Plaintiff wants to marry an object, there is nothing at wrong with him relative to Kitchen's who set out on a crusade to make Sobiety his legally recognizable wife in order to self-justify the religious beliefs that Kitchen has elected to center his entire life around. *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014).[40]

---

[40] The fact that man-woman marriage stands on its own as self-evident is telling. The fact that all other forms of marriage need government recognition to make them valid is also telling as to whether the attempt to shoehorn these marriages into legal recognition amount to an express violation of the first amendment establishment clause which

85.  In fact, Amendment 3 and the Marriage Discrimination Statutes harm the state interest in

equality because it requires that men and women be treated differently only based on discredited

and antiquated notions of gender. Of course, man-man marriage discriminates against women on

the basis of gender by telling them that they are not good enough to be a wife and mother. And

woman-woman marriage discriminates against men by telling them that they are not good

enough to be a father and husband. Man-object marriage does the same but at least the object is

gender neutral.

86. Amendment 3 and the Marriage Statutes violate the Equal Protection Clause in their post

*Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) amended form because they discriminate against

machinists, beastialists, and polyamists by arbitrarily denying them a right to marry the item or

items of their choice based on their feelings and identity narrative, whereas those who

self-identify as homosexual and heterosexual may do so freely and receive legal recognition and

government benefits. These laws also continue to disadvantage suspect classes in preventing

only machinists, beastialists, and polygamists, not heterosexuals, from marrying, if and only if

gay marriage is actually legally valid. Amendment 3 and the Marriage Discrimination Statutes

also violate the Equal Protection Clause because they onced discriminated against gay men and

lesbians legally married in another state but continue to discriminate against different-sex

individuals who married in another jurisdiction by denying them the official sanction of their

---

shuts down further discussion on the 14th amendment. And even if the 14th amendment were applicable. It appears
to be obvious that the Courts had no intention of giving equal protection and due process to the non-obvious classes
of sexual orientation in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) and *Kitchen v. Herbert*, 755 F.3d 1193 (10th
Cir. 2014) or the Courts would have granted the Plaintiff's repeated intervention requests. There is no doubt that the
Federal Courts are engaging in fraud. Governor Herbert and Attorney General Reyes have undertaken an oath to
uphold the Constitution. They must fight back against the Federal Courts complicity in hijacking the Constitution.
Otherwise, the State should lay down and let the Plaintiff marry an inanimate object. The current national definition
of marriage and status quo cannot remain if we are to remain the United States.

marriage in the State of Utah and the rights and benefits that flow from marriage. Whereas those who self-identify as heterosexual and homosexual men and women legally married in another state have their marriage officially sanctioned by the State of Utah, and receive, by operation of law the rights and benefits that flow from marriage, the true minority of sexual orientation has been arbitrarily denied these rights. And this wrongful denial disadvantages a suspect class in preventing only man-object, man-animal, and man-multiperson individuals, not heterosexuals and homosexuals, from having out-of-state marriages recognized in the State of Utah and in-state marriages authorized.

87. Following *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015) and *United States v. Windsor*,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013)  amendment 3 and the Marriage Statutes restrict civil marriage to individuals of the opposite sex and same-sex, while those who self-identify as different-sex are unable to marry the persons, animals, and objects of their choice or have their different-sex marriage in another jurisdiction legally recognized in Utah. Thus, Utah law treats similarly-situated people differently by providing civil marriage to same-sex and opposite-sex individuals, but not to different-sex individuals who remain discriminated against without a valid justifiable basis.[41] As a consequence, different-sex individuals are not provided the tangible

---

[41] The legal evidence and controlling authority has made it absolutely clear that man-object marriage is equal to man-man and woman-woman marriage. To strike down man-object marriage is to kick over the legal sand castle that is gay marriage. The State or Court might feel that man-object marriage is not valid but that is all that it is a "feeling." And why should the feelings of the District Court or the State be privileged over the feelings of the Plaintiff. For the Court or the State to suggest that man-object marriage is invalid but gay marriage is fine amounts to the exact same moral superiority that was at the heart of *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) and *United States v. Windsor*,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 ).  In fact, according to Justice Kennedy's own words, to deny the Plaintiff's request to marry an object is an act of "bigotry." Hypothetically, if a man like Omar Mateen wanted to marry an AR 15 in step with his sexual orientation self-identity narrative, he could. If the husband then went on a murder spree at the subsequent criminal trial the accused individual could invoke the spousal exception to the hearsay rule and preclude the weapon entering into evidence and testifying against him. If that were to lead to the Defendant's exoneration, he could then declare with convincing clarity that "love wins," but perhaps the dead victims could not. But under the supremacy clause and the doctrine of preemption the 14th amendment due process and equal protection rights trump these kinds of considerations. The Court has to decide if sexual orientation as a basis for these rights is rational or whether the Federal Courts in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015),

benefits and privileges of marriage. Even if these benefits and privileges were through some other mechanism besides civil marriage, it still would be unequal because the designation "marriage," enjoys a long history and uniform recognition. Like the gays of old, different-sex individuals are therefore unequal in the eyes of the law, and their families are denied the same respect and legal rights as officially sanctioned families of opposite sex and of same sex individuals. By purposefully denying civil marriage to different-sex individuals, Utah's ban on other-oriented marriage continues to discriminate on the basis of sexual orientation against the real minority.

88. The disadvantage Amendment 3 and the Marriage Statutes in their amended form upon different-sex individuals is the result of disapproval or animus against a politically unpopular group. Amendment 3 and the Marriage Statutes impose a special disability upon those persons alone and deprive them of specific legal protections afforded to opposite-sex and same-sex married couples without any legal justification whatsoever. Accordingly, Amendment 3 and the Marriage Statutes violate the Equal Protection Clause of the Fourteenth Amendment in their altered form because they used to single out individuals who self-identify under the culturally created labels of gay and lesbians but continue to single out the remaining non-obvious classes of sexual orientation, which continues to unjustifiably impose a disfavored legal status, thereby creating a category of "third-class citizens," not merely "second class citizens" that those who

---

Lawrence, *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014), *United States v. Windsor,*133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013 )  are perpetrating the greatest fraud ever imposed on the American public since the inception of American Jurisprudence. When the Courts listen to culture as a basis of law injustice follows. This is what we saw in Plessy v. Ferguson, 163 U.S. 537 (1896) which *Brown v. Board of Education of Topek*a, 347 U.S. 483 (1954) overturned. The Utah District Court must have the integrity, honor, leadership, and humility to admit when the prior federal courts have gotten matter wrong. Since the current definition of marriage is unquestionably constitutionally invalid for being either overinclusive or underinclusive, *Sevier v. Thompson* stands to be to *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015) what *Brown v. Board of Education of Topek*a, 347 U.S. 483 (1954) was to Plessy v. Ferguson, 163 U.S. 537 (1896). The only difference is that it is not going to take a century for the Court's fraud to be undone.

self-identify as homosexual claim to have. *United States v. Windsor,* 133 S. Ct. 2675, 186 L. Ed.

2d 808 (2013); *Windsor v. United States,* 699 F.3d 169 (2d Cir. 2012).[42]

### SEVENTH CLAIM FOR RELIEF (Violation of 42 U.S.C. § 1983)

89.  The Plaintiff repeats and incorporates by reference all of the above allegations of this

Complaint as though fully set forth herein.  Insofar as they are enforcing the terms of

Amendment 3 and/or the Marriage Statutes, Defendants, acting under color of state law, are

depriving and will continue to deprive the Plaintiff and other different-sex individuals of

numerous rights secured by the Fourteenth Amendment of the United States Constitution in

violation of 42 U.S.C. § 1983 for reasons that are completely arbitrary - if and only if gay

marriage is also to remain legally cognizable.

90. As a result, the Court, pursuant to 28 U.S.C. § 2201, should enter a declaratory judgment

stating that the law in their amended form and any other Utah law that onced barred same-sex

marriage but continues to bar the other non-obvious classes of sexual orientation marriages,

violate 42 U.S.C. § 1983, and should enter a permanent injunction enjoining enforcement or

application of Amendment 3 or any other Utah law that bars different-sex marriage, and to

compel Defendants to legally recognize the marriage of all different-sex individuals who relocate

to Utah.

---

[42] Amendment 3 and the Marriage Discrimination Statutes also violate the Equal Protection
Clause because these laws discriminate on the basis of gender. An object is gender neutral. Polygamist could be in a
relations where they are attracted to both men and women. Beastialists could be sexually involved with animals who
may be male or female. These laws distinguish between couples consisting of a man and a woman and couples
consisting of individuals of different kind of sexual taste. Thus, the limitation on civil marriage depends upon an
individual person's gender and appetite; a man who wishes to marry a man can now do so even though his wife is a
man, and a woman may now marry a woman can make her the husband; but the Plaintiff cannot marry a object
because it is gender neutral, and polygamist cannot marry multiple partners even though they may have a taste for
both sexes, and a beastialist cannot marry an animal even though the animal might be of the same-sex or of the
opposite-sex of the individual.

91. Alternatively, pursuant to 28 U.S.C. § 2201 the Court should enter a declaratory judgment stating that the Amendment 3 and the Marriage statutes should be completely revived to their original form enjoining the enforcement of the Supreme Court's decision in *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) under 42 U.S.C. § 1983 for (1) violating the first amendment and (2) because sexual orientation is not really a basis for suspect classification like race is. It is unfair and discriminatory against the Plaintiff for the Government to allow those who self-identify as homosexual to marry but not those who self-identify as machinists to do so. It communicates to the Plaintiff that his religious beliefs are inferior to those who have bought into the gay ideology.

92. For the government to fail to equate the legal validity of man-object marriage to man-man marriage relegates the Plaintiff to third class citizen status. The fact that the Plaintiff is a combat Army Officer and veteran of the rule of law mission in Operation Iraqi Freedom makes the Government's refusal to legally equate man-man, woman-woman, and man-object marriage as equal amounts to a factor in aggravation because it discredits the Plaintiff's service to our Nation in an overseas theater of war. Such conduct by the Federal Judiciary amounts to service discrediting misconduct with is an impeachable offense.

## EIGHTH CLAIM FOR RELIEF: IRREPARABLE INJURY

93. The Plaintiff repeats and incorporates by reference all of the above allegations of this Complaint as though fully set forth herein. In light of *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015), the Plaintiff and other different-sex individuals are now severely and irreparably injured by Amendment 3 and the Marriage Statutes that violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the same extent that they violate the rights of those

who self-identify as homosexual for at least long enough to acquire a marriage license.  By way

of example only, different-sex people's injury as a result of Amendment 3 and the Marriage

Statutes includes the deprivation of rights guaranteed under the Fourteenth Amendment; and the

severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma caused by

the inability to marry the animals, objects, and people they feel that they love and have society

accord their unions and their families the same respect and dignity enjoyed by same-sex unions

and families. The Plaintiff and all other different-sex individuals living in Utah injuries will be

redressed only if this Court declares that Amendment 3 and the Marriage Statutes

unconstitutional as applied to them and their beliefs, enjoining the Defendants from enforcing

them against the remaining non-obvious classes of sexual orientation, and compels Defendants to

legally recognize different-sex marriages entered in other jurisdictions in the State of Utah. Or

secondarily, the Plaintiff and all other different sex-individuals living in Utah injuries will be

redressed only if this Court declares that Amendment 3 and the Marriage Statutes in their

original form prior to *United States v. Windso*r,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013)  and

*Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) are Constitutional.  By overturning those cases,

the man-object marriage can have the same legal recognition that man-man and woman-woman

marriage has which levels the playing field. The Plaintiff has not necessarily taken the position

that man-object marriage is equal to man-woman marriage for self-evident reasons, but the

Plaintiff emphatically demands that man-object marriage be given the same legal recognition as

man-man and woman-woman marriage.

94. An actual and judicially cognizable controversy exists between the Plaintiff and Defendants,

who used to discriminate against the same-sex individuals and continue to discriminate against

all the remaining classes of sexual orientation who were shut out of prior litigant, regarding whether Amendment 3 and the Marriage Statutes violate the Dues Process and Equal Protection Clauses of the Fourteenth Amendment. Defendants are presently enforcing these state laws to the detriment of myself and all of the other-oriented members of sexual orientation besides gay and straight.

PRAYER FOR RELIEF WHEREFORE, the Plaintiff requests the entry of a judgment in his favor, for the same basis that one was awarded to those who self-identify as gay and believe in the plausibility of their ideology as jihadists, as the Court awarded in *Kitchen v. Herbert,* 755 F.3d 1193 (10th Cir. 2014), *Obergefell v. Hodge,*192 L. Ed. 2d 609 (2015), and *United States v. Windso*r,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) and against Defendants as follows: 1. A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Amendment 3 and any other Utah law or policy that once-upon-a-time barred same-sex marriage but continues to bar the remaining different-sex individuals from marrying in step with their self-proclaimed sexual orientation, including the Marriage Statutes, violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983 for being arbitrarily underinclusive and predicated on a private moral code of moral relativist that is irrational.

2. A permanent injunction enjoining enforcement or application of Amendment 3 and any other Utah law that once barred man-man and woman-woman marriages and continues to bar man-object, man-animal, and man-multi-person marriages, including the Marriage Statutes, and compelling Utah to recognize the Plaintiff's right to have a Utah marriage license issued and his out-of-state marriage recognized in the State of Utah.

3. A judgment awarding my costs of suit, including reasonable attorney' fees under 42 U.S.C. §.
1988, and such other and further relief to which they may be entitled.

4. Or alternatively, the Plaintiff asks that the Court issue an order that nullifies all marriages
beyond man-woman ones for equally violating the first amendment establishment clause.
Amendment 3 and the Marriage Statutes codify self-evident fact and only incidentally parallel
Christianity in the same way that the Bill of Rights and Constitution does. The legal codification
of gay marriage is based on a series of naked assertions and unproven faith based assumptions
that are implicitly religious.

5. The Court is asked to overturn *United States v. Windso*r,133 S. Ct. 2675, 186 L. Ed. 2d 808
(2013 ) and *Obergefell v. Hodge*,192 L. Ed. 2d 609 (2015) for being removed from reality and
Constitutionally invalid. The Court is asked to overturn *Lawrence v. Texas,* 539 U. S. 558, 575
(2004) for falsely equating homosexuality to race pretending that sexual orientation involves
immutable traits like race does.

 6.   The Court should issue a declaration that revives Amendment 3 and all other laws impacted
by the decisions in *Obergefell v. Hodge,* 192 L. Ed. 2d 609 (2015) and *United States v. Windsor,*
133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) for amounting to judicial fraud, waste,
mismanagement, and abuse.  If the Plaintiff is not permitted to be married to an inanimate object,
then no man should be permitted to marry another man, and no woman should be allowed to
marry another woman.

Respectfully Submitted,

/s/Chris Sevier/
355 300 North Panther Way,
Salt Lake City, UT 84103
9 Music Square South 247
Nashville, TN 37203

615 500 4411
ghostwarsmusic@gmail.com
BPR#026577; Minister License: 7860644
1LT 27A JAG _th SPF G
Ghost OP Alpha Charlie